SIGNED.

Dated: June 13, 2012

**James M. Marlar, Chief Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF ARIZONA

In re:

DELBERT C HODGE and RENEE D HODGE,

Debtors.

Chapter 11

No. 2:09-bk-26411-JMM

**MEMORANDUM DECSION**

Before the court is a controversy which requires interpretation of the Debtors' confirmed plan, and based upon such interpretation, the court must determine whether the Debtors defaulted thereunder, or if some other just remedy may be applicable.

## PROCEDURAL HISTORY

### 1. In General

The Debtors filed an individual Chapter 13 case on October 19, 2009. It was converted to a Chapter 11 case on December 1, 2009. Included in their schedules were the two parcels of real property which are at the heart of the dispute. Their status then was:

| Property | Value | Lienholder/Position | Balance Due |
|---|---|---|---|
| 6810 S. 15th St. Phoenix, AZ | $261,800 | BankUnited / 1st | $348,163 |
| 2275 W. Pecan Rd. Phoenix, AZ | $182,100 | BankUnited/ 1st | $168,385 |

(ECF No. 10).

## 2. Stay Relief Motions

### A. Pecan Road Property

On February 23, 2010, BankUnited filed a motion for stay relief. It alleged that Debtors had failed to make monthly mortgage payments to it, from November 1, 2009 to February 1, 2010 (four consecutive months), and that each payment was $623.71, aggregating $2,494.84. BankUnited added to that figure the costs associated with seeking stay relief ($500), accrued late fees ($449.74), "other fees" ($68), an NSF fee ($25) and an escrow advance ($542.23). (ECF No. 57.)

Quickly thereafter, the parties entered into a stipulation for monthly payments of $623.71, to begin May 1, 2010, and continue "until the confirmation of the Debtors' plan of reorganization" (ECF No. 102).

The court approved the stipulation by order dated April 9, 2010 (ECF No. 122).

### B. 15th Street Property

On February 23, 2010, BankUnited filed a motion for stay relief. It alleged that Debtors had failed to make monthly mortgage payments to it, from November 1, 2009 to March 1, 2010 (five consecutive months), and that each payment was $2,037.43, aggregating $10,187.15. In

addition to the motion's fees and costs ($500), BankUnited alleged that it had advanced $175 for an unspecified "corporate advance."  Finally, BankUnited noted that it was holding $1,443.93 of the Debtors' cash in a "suspense" account.  (ECF No. 63.)

As with the Pecan Road property, the parties were able to negotiate a stipulation, approved by the court on April 9, 2010, by which the Debtors agreed to make adequate protection payments of $2,037.43 per month, commencing May 1, 2010, and continuing until superseded by "the confirmation of the Debtors' plan of reorganization."  (ECF Nos. 100, 108.)

### 3. Disclosure Statement and Plan

On June 1, 2010, the Debtors filed a plan of reorganization and a disclosure statement (ECF Nos. 148, 149).  As for the treatment of these two properties, the disclosure statement noted that the plan intended to treat the BankUnited claims as "impaired" Class 5 and 7 claims, and pay them in the following manner:

> Pecan Road Property.  Pay only the current value of the property, as determined by the County Assessor, with annual interest of 5% (ECF No. 148 at 17).  A Distribution Schedule was attached as an exhibit reflecting steady monthly payments of $628.
>
> 15th Street Property.  Same treatment as the Pecan Road property.  (ECF No. 148 at 18-19).

The Debtors' plan also provided a treatment for any potential unsecured deficiency affecting either property.  These were to share in a pool of funds to be created, with BankUnited having a deficiency/unsecured claim of $237,269.98 for one property, and having a deficiency of $51,977.87 for the other (ECF No. 149 at 23).

A distribution on the secured portion, of $599, was proposed for the 15th Street property (Class 5).  A distribution on the secured portion, of $628, was proposed for the Pecan Road property (Class 7).  (Ex. A to the plan outlined these payments.)

3

Case 2:09-bk-26411-BMW    Doc 283    Filed 06/13/12    Entered 06/14/12 01:14:24    Desc
Main Document - Order Confirming Chapter 11 Plan    Page 3 of 13

The disclosure statement and plan were served on BankUnited's counsel, who filed an objection thereto. The objection was based upon what BankUnited felt was an unsubstantiated (and low) value for each property. Additionally, BankUnited felt that the 5% interest rate was too low in the current market. (ECF Nos. 157-158.)

### 4. Parallel Tracks

At the same time that the Debtors were dealing with the administrative issues surrounding confirmation, they were also attempting to resolve BankUnited's claims, and settle the value of the two properties securing them. These matters proceeded down two side-tracks: (1) objections to claims; and (2) adversary proceedings.

Each will be discussed in the next two sections of this Decision.

### A. Objections to Claims

BankUnited filed two secured proofs of claim, as follows:

| **Claim No.** | **Balance Due** | **Secured** | **Property** |
|---|---|---|---|
| 21 | $348,869.98 | Yes | 15th Street |
| 29 | $168,977.87 | Yes | Pecan Road |

The Debtors objected to the claims, framing them principally as requests for § 506(a) determinations of value. The Debtors maintained that the values for the properties were:

        15th Street  -    $111,600

        Pecan Road  -    $117,000[1]

---

[1] This was taken up and decided in Adversary 10-ap-943, when a value conclusion of $63,000 was agreed to.

Eventually, BankUnited amended its claim on the 15th Street property to reflect a principal balance of $150,000 (see Claims Register, No. 21).

As for the Pecan Road property, BankUnited amended its Claim 29 to reflect a "Notice of Payment Change," effective December 1, 2011, to reflect:

**New total payment:**     $648.42

Principal, interest, and escrow, if any

But, in the same document, it also appeared to indicate that the necessary account payment adjustment required a "current escrow payment" of an additional $1,162.97. No explanation was given as to whether if, or how, the "new total payment" would affect the $648.42 figure set forth in the same document as the "new" payment.

At this point, the confusion began to expand exponentially.

### **B. Adversary Proceedings**

### **(1.)  15th Street (Adv. 10-ap-939)**

With respect to the 15th Street property, the Debtors filed adversary proceeding 10-ap-939 on May 27, 2010. The complaint was of the classic "lien strip" type, in which the Debtors maintained that the value of BankUnited's secured claim was $111,600.

Initially, BankUnited answered and defended the allegations. Later, the parties settled the matter with a determination that the property's value was to be fixed at $150,000, the interest rate would be 5.5% and the loan would be re-amortized for a 30-year period. The court approved the agreement on October 20, 2010 (ECF Nos. 11, 15).

### (2.) Pecan Road (Adv. 10-ap-943)

As with the other property, an adversary was also filed regarding the Pecan Road property. The Debtors maintained that this land was worth $117,000.

Again, this matter was also settled, on the following terms. The secured value was found to be $63,000, which would be re-amortized over 30 years, with a 5.5% interest rate. This agreement was approved by the court on October 25, 2010 (ECF Nos. 12, 14).

Resolution of the two above adversary proceedings resolved the claims of BankUnited, and allowed the Debtors to finalize BankUnited's treatments in Classes 5 and 7, and move toward confirmation of their plan.

### 5. Back to Confirmation

With the issues affecting and stabilizing BankUnited's claims and values now in the Debtors' rearview mirror, the Debtors needed to achieve confirmation of their plan.

However, a couple of wrinkles now also appeared.

On August 19, 2010, the Debtors filed an "amended" plan (ECF No. 185). Without detailing the "treatment" under this plan, suffice it to say that it simply recited the current differences between the parties, and left later treatment to be firmed up once the adversary proceedings were resolved.

On October 6, 2010, the parties filed a stipulation regarding the value and treatment for BankUnited under any plan, as to the <u>Pecan Road</u> property (ECF No. 209). Its material terms stated:

1. The secured value was set at $63,000.
2. The interest rate on said sum was to be 5.0% per annum.

Case 2:09-bk-26411-BMW    Doc 283    Filed 06/13/12    Entered 06/14/12 01:14:24    Desc
Main Document - Order Confirming Chapter 11 Plan    Page 6 of 13

6

3. "The Escrow account will remain in effect with the escrow payment <u>to be added</u> to the monthly payments" (emphasis added).

4. Re-amortize over 30 years.

5. Unsecured sum of $168,381.52 to become a general unsecured claim, to share pro-rata with other unsecured creditors.

6. This treatment would become the agreement for treatment of the Class 5 claim.[2]

This agreement was approved by the court on October 8, 2010 (ECF Nos. 209, 212). On October 19, 2010, the above stipulation was amended to provide for a 5.5% interest rate. An order was submitted on that document, and signed by the court on October 25, 2010 (ECF Nos. 217, 223). <u>However</u>, the order apparently <u>still</u> carried the 5.0% rate! (<u>See</u> ECF No. 223, at 2, line 9.) Then another order (ECF No. 224), flipped it back to 5.5%.

As for these inconsistencies, the record appears to be that the intention of the parties was to agree to an interest rate of 5.5%, and to the extent that issue needs clarification here, that point is now settled at 5.5%

Finally, on November 23, 2010, the Debtors appeared and presented their evidence for confirmation. Appearances were made by Debtors' counsel, and by the attorney for Colonial Capital. No appearances were made by BankUnited. At the conclusion of the evidence, the court ruled that confirmation would be approved (ECF No. 232). On December 21, 2010, the court entered its order confirming the plan (ECF No. 240).

In the order confirming plan, the treatment of BankUnited as to the <u>Pecan Road</u> property was as agreed by the stipulation at ECF No. 223, with a value of $63,000 and a 30-year term, with a 5.5% interest rate (ECF No. 240 at 3). The treatment also stated that: "BankUnited shall be paid as set forth in the Disbursement Schedule, a copy of which is attached as Exhibit A." (ECF No. 240 at 3, lines 12-13). Exhibit A called for equal monthly payments of $409.24.

As for the <u>15th Street</u> property, the treatment accorded to BankUnited was to be as set

---

[2] Of great importance here is the fact that the parties did <u>not</u> set forth what that monthly payment was to be, nor how it was to be broken down.

forth in the ECF No. 183 stipulation, which valued the property $150,000, set interest at 5.5% and amortized that value over 30 years. The plan also stated that a Disbursement Schedule, attached as Exhibit A, would pay as follows: "BankUnited shall be paid as set forth in the Disbursement Schedule, a copy of which is attached as Exhibit A." (ECF No. 240 at 4, lines 11-12.) Exhibit A provided for equal monthly payments of $914.82.

No post-hearing objections were made to the confirmation order, and no appeals were taken therefrom. Thus, the confirmation order became final on the 15th day following its entry on the docket on December 21, 2010 (which would have been January 5, 2011).

And, since that confirmation order became final, there have been no Rule 60 motions (made applicable by FED. R. BANKR. P. 9024) to set aside the order.

### 6. Retention of Jurisdiction

Since the confirmation order is final, this court's continuing jurisdiction is limited. *See In re Pegasus Gold Corp.,* 394 F.3d 1189, 1194 (9th Cir. 2005) (applying "close nexus" test for "related to" post-confirmation jurisdiction). Referring to the last iteration of the plan itself (ECF No. 185) ("First Amended Plan of Reorganization"), that vestige of jurisdiction is found in Article XIII of the plan, and includes retained jurisdiction "for purposes of determining any disputes arising from the interpretation, implementation or consummation of the Plan and to implement and enforce the provision of the Plan." (ECF No. 185 at 20.) This aspect of the court's jurisdiction is "core," and ancillary to its power to confirm plans. 28 U.S.C. § 157(b)(2)(L).

Jurisdiction, being thus established, moves us to the final phase of the instant problem.

8

Case 2:09-bk-26411-BMW    Doc 283    Filed 06/13/12    Entered 06/14/12 01:14:24    Desc
Main Document - Order Confirming Chapter 11 Plan    Page 8 of 13

## 7. Issues Erupt Over the Amount of the
## Payments Due on the Pecan Road and 15th Street Properties

First, there was a Notice of Default filed by BankUnited on November 15, 2011, as to the Pecan Road property, but it sputtered and was withdrawn on December 8, 2011 (ECF Nos. 251, 256). In fairness, this event occurred before the plan was confirmed on December 21, 2010, and confirmation, it is assumed, mooted out BankUnited's concerns. (Order at ECF No. 259).

There was a also Notice of Default filed by BankUnited on November 15, 2011, as to the 15th Street property, but it also sputtered and was withdrawn on December 8, 2011 (ECF Nos. 249, 254). This event also occurred before the plan was confirmed on December 21, 2010, and again confirmation mooted out BankUnited's concerns. (Order at ECF No. 258).

Thirteen months of relative tranquility followed confirmation.

Then, on February 9, 2012, the case imploded. BankUnited filed a Notice of Default as to the 15th Street property (ECF No. 260). Without taking into account attorneys' fees ($150), BankUnited asserted that the Debtors were delinquent in failing to pay the December, 2011, January and February, 2012 payments of $2,473.72 per month, or an aggregate of $7,421.16. It demanded payment, in the absence of which it would institute foreclosure.

The Debtors responded on February 23, 2012 (ECF No. 263). Their position was that BankUnited's demand exceeded the amounts they were required to pay it under the confirmed plan. That amount would be only $914.82 per month, total.

On March 16, 2012 (ECF No. 267), BankUnited made similar allegations as to the Pecan Road property, alleging that Debtors had failed to pay it, for four consecutive months (December, 2011, January, February and March, 2012), a monthly payment of $648.42 per month.

On March 16, 2012, the Debtors responded and defended on the same grounds, to wit,

9

Case 2:09-bk-26411-BMW    Doc 283    Filed 06/13/12    Entered 06/14/12 01:14:24    Desc
Main Document - Order Confirming Chapter 11 Plan    Page 9 of 13

that BankUnited's demands exceeded the amounts that they were required to pay each month under the confirmed plan--$409.24 (ECF No. 269).

The court then held a series of hearing on the contentions, while the parties attempted to negotiate a resolution (ECF No. 279: April 19, 2012; ECF No. 281: May 16, 2012; ECF No. 282: June 6, 2012). At the last hearing, the parties were at an impasse, and the court was asked to decide the crux of the dispute.

## **DISCUSSION**

At issue is what, specifically, are the Debtors supposed to pay each month on the 15th Street and the Pecan Road properties. This is not a difficult decision, and is answered by reference to the Order Confirming the Debtors' First Amended Plan of Reorganization, as Modified and entered December 21, 2010, and which is now final. The court agrees with the Debtors' analysis.

Issues of notice are not applicable here. BankUnited has participated fully at every stage, or has had the opportunity to do so.

The Disbursement Schedule, attached to the confirmation order, sets forth exactly what the Debtors are to pay to BankUnited each month:

        Pecan Road   $409.24

        15th Street    $914.82

Additional sums, as contended by BankUnited, however, are <u>not</u> to be added to these figures. The debts were modified under a confirmed, and now final plan. The Debtors were clear and unambiguous as to how much they would pay BankUnited each month. The plan was fully heard, and no claim was made by BankUnited at the confirmation hearing, nor in any short time period thereafter, that either an error of some type, or an unintended consequence, had occurred.

10

Case 2:09-bk-26411-BMW    Doc 283    Filed 06/13/12    Entered 06/14/12 01:14:24    Desc
Main Document - Order Confirming Chapter 11 Plan    Page 10 of 13

Now, to the extent that the Debtors have failed to make these <u>authorized</u> payments, then BankUnited may have reason to again seek default. However, if there are defaults, as this court has finally determined the Debtors' obligations to be, they shall have 21 days to cure them.

But on this record, now having established the plan's requirements, the Debtors' plan obligations appear not to be in default--at least in the amounts BankUnited claims to be due.

The payment amounts for each property did not specify any breakdown for principal, interest nor escrow impounds. To the contrary, it was expressly set to be <u>the total payment</u> to be made to BankUnited each month. How it was to be divided up, or what was allegedly the "understanding," should have been brought to the court's attention at some appropriate point. Not having been done, the final order governs the parties' relationship under the plan.

In attempting to ascertain what went wrong in each party's expectations of how the plan would work, the court has come to the realization that, while each party felt the drafting was unambiguous, each was correct. It was. But it was <u>not complete</u>. This, in turn, led to the current misunderstanding, and the different viewpoints as to the intent of the plan.

The problem of "expectation" began early in the case, when the parties temporarily resolved their issues in the stipulations regarding stay relief. Each of those stipulations provided for monthly payments of $623.71 (Pecan Road) and $2,037.43 (15th Street), but those agreements failed to break down those monthly payments into distinct component parts, such as principal, interest, tax impounds, mortgage insurance, etc.

Then, the plan was proposed, but its focus was on value, term, interest rate and amortization of principal and interest. But, tellingly, it began to refer to a Distribution Schedule which could fairly be interpreted as being all-inclusive, meaning that logically, if spread over a 30-year term, it <u>could</u> be interpreted as including <u>all</u> components. By making no mention of a breakdown, it was not illogical nor unreasonable for the Debtors and their counsel to assume that they were modifying <u>everything</u> that related to and was included within each monthly payment.

As the case moved further along, the adversary proceedings and claim objections focused on value, term and interest rate, but the plan continued to hold firm on what each actual

payment was to be. When the parties reached agreement and began <u>lowering</u> each property's fair market value, and also lowering the interest rates, the numbers plugged in by the Debtors for their monthly payment, on the plan's Distribution Schedule, did not seem to be out of line.

The problem was that BankUnited <u>believed</u> that other escrow amount requirements would be <u>added</u> to the Distribution Schedule amounts, while the Debtors believed that the Distribution Schedule amounts <u>included</u> those peripheral numbers.

Thus, because the final order confirming the plan provided for a monthly payment which could be construed either way (i.e., Debtors' belief that all impounds were <u>included</u>, and BankUnited's belief that all impounds were to be paid <u>in addition</u>), the court only needs to determine if there was an <u>ambiguity</u> in the confirmation order. Unfortunately for BankUnited, the order is clear and unambiguous, and includes within it the Distribution Schedule. It can be reasoned that, within its four corners, especially without objection from BankUnited at confirmation, that the Distribution Schedule included everything. The confirmation order modified the secured debts on both the Pecan Road and 15th Street properties, authorized by 11 U.S.C. § 1123(a)(5)(E), (G) and (H), and thus created a new contract between the parties. See *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n*, 997 F.2d 581, 588 (9th Cir. 1993). As an impaired creditor, BankUnited probably bore the largest responsibility for seeking clarification of the details about which the parties are now arguing. In the absence of an objection on these points, BankUnited is stuck with the final order.

One issue, though, remains, which troubles the court. From the discussion had in the courtroom on June 6, 2012, the court was left with the impression that the Debtors' Distribution Schedule for both Pecan Road and 15th Street properties was not intended to include the Debtors' responsibility for real estate taxes. Perhaps the parties could lodge a form of order clarifying their intentions on that point, or seek a further hearing if they cannot agree.

A separate order will be entered which disposes of the two BankUnited notices/objections (ECF Nos. 260, 267). Those orders will become final unless appealed within 14 days thereafter. FED. R. BANKR. P. 8002. Counsel for the Debtors is requested to upload such an order within 15 days.

12

Case 2:09-bk-26411-BMW    Doc 283    Filed 06/13/12    Entered 06/14/12 01:14:24    Desc
Main Document - Order Confirming Chapter 11 Plan    Page 12 of 13

DATED AND SIGNED ABOVE.

COPIES to be sent by the Bankruptcy Noticing Center ("BNC") to the following:

German Yusufov, Attorney for Debtors
Leonard McDonald, Attorney for BankUnited
Office of the U.S. Trustee

Case 2:09-bk-26411-BMW    Doc 283    Filed 06/13/12    Entered 06/14/12 01:14:24    Desc
Main Document - Order Confirming Chapter 11 Plan    Page 13 of 13

13